Slip Op. 19-97

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARCELORMITTAL USA LLC, | |
| Plaintiff, | |
| and | |
| AK STEEL CORPORATION, NUCOR CORPORATION, AND UNITED STATES STEEL CORPORATION, | |
| Plaintiff-Intervenors, | |
| NOVOLIPETSK STEEL PUBLIC JOINT STOCK COMPANY, | Before: Gary S. Katzmann, Judge |
| Consolidated Plaintiff, | Consol. Court No. 16-00168 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| PAO SEVERSTAL AND SEVERSTAL EXPORT GMBH, | |
| Defendant-Intervenors. | |

## OPINION

[Commerce's Final Results of Redetermination Pursuant to Court Remand is sustained in its entirety.]

Dated: July 29, 2019

John M. Herrmann, II and Brooke Ringel, Kelly Drye & Warren, LLP, of Washington, DC, argued for plaintiff.  With them on the joint brief were Paul C. Rosenthal, Kathleen W. Cannon, and R. Alan Luberda; Alan H. Price, Timothy C. Brightbill, and Christopher B. Weld, Wiley Rein LLP, of Washington, DC, for plaintiff-intervenor, *Nucor Corporation*; Thomas M. Beline, and Sarah E.

Shulman, Cassidy Levy Kent, LLP, of Washington, DC, for plaintiff-intervenor, *United States Steel Corporation;* and Daniel L. Schneiderman, and Stephen A. Jones, King & Spalding LLP, of Washington, DC, for plaintiff-intervenor, *AK Steel Corporation.*

Matthew P. McCullough and Tung A. Nguyen, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, argued for consolidated plaintiff.  With them on the brief was Marat S. Umerov.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, and Jeanne E. Davidson, Director.  Of counsel was Brendan Saslow, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC. With him on the brief was Lydia C. Pardini, attorney.

Daniel J. Cannistra, Crowell & Moring LLP, of Washington, DC, argued for defendant-intervenors.

Katzmann, Judge:  In the prequel to the instant matter, there was occasion to take note of the multiple parties and agencies, shifting alignments and intersecting claims and issues that often mark the cases that unfold in the United States Court of International Trade.  ArcelorMittal USA LLC v. United States, 42 CIT __, 337 F. Supp. 3d 1285 (2018).  The court here returns to the complex litigation surrounding the United States Department of Commerce's ("Commerce") final affirmative determination of its Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products From the Russian Federation, 81 Fed. Reg. 49,935 (Dep't Commerce July 29, 2016) ("Final Determination"), P.R. 531 and the accompanying July 20, 2016 Issues and Decision Memorandum, C–821–823 ("IDM"), P.R. 522.  In this consolidated action, plaintiffs from two different cases -- ArcelorMittal USA LLC ("ArcelorMittal") and Novolipetsk Steel Public Joint Stock Company ("NLMK") -- challenge different elements of the Final Determination and IDM. Before the court now is Commerce's Final Results of Redetermination Pursuant to Court Remand ("Remand Redetermination") (Dep't Commerce Dec. 18, 2018), ECF No. 115, which the court ordered in ArcelorMittal, 337 F. Supp. 3d 1285.

In its previous decision, id. at 1309, the court remanded the Final Determination to Commerce (1) to explain or reconsider how the adverse facts available ("AFA") rate that Commerce applied to a respondent in the investigation, Severstal Export GMBH ("Severstal"), was sufficiently adverse; and (2) to provide the specific factual basis for its AFA finding that the Government of Russia's ("GOR") provision of natural gas to NLMK was a specific and thus countervailable subsidy.  On remand, Commerce (1) applied the same AFA rate to Severstal; and (2) indicated that it based its specificity finding on the 2013 annual report of a GOR authority, Public Joint Stock Company Gazprom ("Gazprom").  See Remand Redetermination at 17, 20. Defendant the United States ("the Government") requests that the court sustain Commerce's Remand Redetermination in its entirety.  Def.'s Resp. to Comments on Remand Redetermination ("Def.'s Br."), Feb. 15, 2019, ECF No. 125.  NLMK argues that Commerce abused its discretion by rejecting NLMK's untimely comments on the draft remand and that the Remand Redetermination does not adequately justify Commerce's specificity finding.  Consol. Pl. NLMK's Comments on Commerce's Redetermination on Remand ("NLMK's Br."), Jan. 17, 2019, ECF No. 118.  ArcelorMittal urges the court to sustain Commerce's Remand Redetermination with respect to the specificity issue but contends that Commerce again failed to explain why its selected AFA rate for Severstal was sufficiently adverse.  Pl. & Pl.-Inter.'s Comments on the U.S. Department of Commerce's Dec. 18, 2018 Final Redetermination Pursuant to Remand ("ArcelorMittal's Br."), Jan. 17, 2019, ECF No. 117; Pl. & Pl.-Inter.'s Resp. to Comments by NLMK on the U.S. Department of Commerce's Redetermination Pursuant to Remand ("ArcelorMittal's Resp."), Feb. 15, 2019, ECF No. 124.  The court sustains Commerce's Remand Redetermination in its entirety.

## BACKGROUND

The relevant legal and factual background of the prior proceedings has been set forth in greater detail in ArcelorMittal, 337 F. Supp. 3d at 1290–98.  Information pertinent to the instant case is set forth below.

In the Final Determination, Commerce determined a *de minimis ad valorem* countervailable subsidy rate for Severstal and a 6.5 percent rate for NLMK.   See Final Determination, 81 Fed. Reg. at 49,936.   In calculating these rates, Commerce examined tax incentives for mining expenses and the provision of natural gas by Gazprom for less than adequate renumeration ("LTAR") and requested relevant information from the companies and the GOR, which it did not provide. ArcelorMittal, 337 F. Supp. 3d at 1294–96.  At verification, Commerce discovered that Severstal had used an income tax deduction for mining expenses that it had not reported and applied AFA to find that Severstal had received a countervailable subsidy for that program.  Id. at 1296–97.   Commerce applied its "[countervailable subsidy duty] CVD AFA hierarchy" for investigations and, under the first tier of that hierarchy, selected as Severstal's AFA rate the highest rate calculated for a cooperating respondent in the same investigation for the identical program.  Id. at 1297.  Specifically, Commerce applied the .03 percent subsidy rate that had been calculated for NLMK for the mining expense program.  Id.; see also 19 C.F.R. § 351.511(a)(2)(ii).

Regarding the provision of natural gas for LTAR via Gazprom, Commerce applied AFA because the Russian government did not provide Commerce with documentation and underlying data that Commerce requested to verify natural gas sales detailed in Gazprom's 2014 annual report. ArcelorMittal, 337 F. Supp. 3d at 1296.  As part of its application of AFA, Commerce found that

Gazprom's provision of natural gas to NLMK was *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(II),[1] thus meeting the criteria for a countervailable subsidy.  Id.

In its remand order, the court sustained Commerce's application of AFA to Severstal's use of the mining expense program; however, the court found that Commerce had not adequately explained why the .03 rate was sufficiently adverse.  Id. at 1300–01.  Specifically, the court found that the two reasons that Commerce gave for why the .03 rate was sufficiently adverse -- that (1) the rate was above zero and (2) the rate was higher than the incorrectly calculated preliminary determination rate -- were insufficient.  Noting that "Commerce [] has wide latitude in its selection of an appropriate AFA rate" and that "Commerce is not obligated to deviate from its hierarchy or produce a program-specific rate that necessarily results in an affirmative overall rate," the court instructed Commerce on remand to "provide adequate explanation as to why the program-specific rate it selected was sufficiently adverse to satisfy the underlying statutory purposes."  Id. at 1301.

The court also sustained Commerce's application of AFA to the provision of natural gas for LTAR but held that Commerce "did not provide any specific factual basis for its [*de facto*

---

[1] 19 U.S.C. § 1677(5A)(D)(iii) provides that:

Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:

**(I)** The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.

**(II)** An enterprise or industry is a predominant user of the subsidy.

**(III)** An enterprise or industry receives a disproportionately large amount of the subsidy.

**(IV)** The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

specificity] conclusion" and remanded the <u>Final Determination</u> to Commerce to "identify the record facts it relied upon in making its *de facto* specificity determination." <u>Id.</u> at 1309.

On November 15, 2018, Commerce released its draft remand redetermination to the parties and gave them until November 26, 2018 to submit comments on it. <u>Remand Redetermination</u> at 7. ArcelorMittal submitted timely comments, <u>id.</u>, but NLMK did not. Instead, on December 3, 2018, NLMK submitted an untimely request for an extension of time to submit comments on the draft remand redetermination. NLMK explained that it did not learn of the issuance of the draft redetermination until December 3 because its counsel had been abroad when Commerce released the draft redetermination and that the "notification to that effect was lost in the email traffic during that period." <u>See</u> Rejection of Extension Request and Comments to Draft Results of Redetermination (Dec. 10, 2018), Remand P.R. 5 ("Rejection Letter"). Commerce found that extraordinary circumstances did not exist that would require it to consider NLMK's untimely request for an extension and rejected NLMK's submissions from the remand record. <u>Id.</u>

In its <u>Remand Redetermination</u>, Commerce again determined that NLMK's .03 subsidy rate should be applied to Severstal as AFA. Commerce noted that, when applying AFA, it "is not required [by statute] to guess at what the result would have been if there had been cooperation" and that "[t]he fact that the CVD program rate in question is, by itself, not sufficiently high to result in an overall subsidy rate for the Severstal Companies that is above *de minimis* is not determinative of whether the program rate itself is sufficiently adverse." <u>Remand Redetermination</u> at 8–9. Commerce described how its hierarchy typically deters non-cooperation, <u>id.</u> at 9–17, and explained that "[t]here is no information on the record to indicate that NLMK's program-specific rate is not sufficiently adverse to the Severstal Companies with regard to that program," <u>id.</u> at 10. Commerce further stated that the .03 rate is "the highest subsidy rate available for the program at

issue" and that "[a]djusting this rate, or selecting another rate in place of it, would be a highly speculative endeavor and could contravene the statute." Id. Specifically, Commerce asserted that using the .03 rate would be consistent with Commerce's statutory responsibilities to deter noncooperation and to use, to the extent practicable, a corroborated AFA rate that reflects the subsidization behavior of the Russian government. Id. at 15.

Regarding the application of AFA to Gazprom's natural gas provision, Commerce stated that, "[o]n the basis of the record, the evidence to support Commerce's AFA *de facto* specificity finding . . . is Gazprom's 2013 annual report." Id. at 20. The 2013 annual report supported the allegation of specificity in the petition for the investigation, and Commerce "note[d] that no interested party brought litigation against Commerce arguing that it should not have initiated [the investigation] on the allegation of the provision of natural gas for LTAR because of inadequate support for specificity." Id. Commerce explained that the 2013 annual report provided evidence that:

> (1) the metallurgy industry "heavily used" natural gas and accounted for four percent of Gazprom's total sales in 2013; (2) the metallurgy sector is one of the top six sectors that accounted for Gazprom's 2013 domestic natural gas sales; and (3) the metallurgy sector is the only industrial manufacturing sector whose consumption of Gazprom's natural gas is separately listed in the annual report.

Id. According to Commerce, these facts supported its finding that the metallurgy sector was a predominant user and thus that the provision of natural gas for LTAR was specific.

On January 17, 2019, ArcelorMittal and NLMK filed their comments on the Remand Redetermination. ArcelorMittal's Br.; NLMK's Br. On January 25, 2019, the case was stayed due to the lapse in appropriations. See Order, Jan. 25, 2019, ECF No. 121. On February 15, 2019, after appropriations had been restored, ArcelorMittal and the Government filed responses. ArcelorMittal's Resp.; Def.'s Br. A few days later, NLMK moved to supplement the record with

its rejected submissions, and the Government opposed this motion.  Mot. to Suppl. the Record, Feb. 19, 2019, ECF No. 126; Resp. to Mot. to Suppl. the Record, Feb. 20, 2019, ECF No. 127. Oral argument was held on July 2, 2019.  ECF No. 133.  The Government filed supplemental authority on July 3, 2019, and NLMK and ArcelorMittal filed supplemental authority on July 10, 2019.  Def.'s Suppl. Auth., ECF No. 134; NLMK's Suppl. Auth., ECF No. 135; ArcelorMittal's Suppl. Auth., ECF No. 136.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii).  Under 19 U.S.C. § 1516a(b)(1)(B)(i), "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  See also Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting 19 U.S.C. § 1516a(b)(l)(B)(i)).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

ArcelorMittal contends that Commerce's Remand Redetermination did not comply with the court's remand order because Commerce's explanation for its selection of the .03 AFA rate remained inadequate.  NLMK, for its part, argues that Commerce impermissibly rejected its untimely comments on the draft remand redetermination and that Commerce failed to sufficiently justify its *de facto* specificity AFA decision.  The court is not persuaded by ArcelorMittal's or NLMK's contentions and sustains Commerce's Remand Redetermination in its entirety.

## I.   *Commerce Adequately Explained Why the .03 Rate Was Sufficiently Adverse.*

ArcelorMittal contends that Commerce inadequately explained why the .03 AFA rate was appropriately adverse because it provided only the general reasoning behind the CVD AFA hierarchy and did not consider the circumstances of this particular proceeding.  See ArcelorMittal's Br. at 7 ("In the draft of its [Remand Redetermination], Commerce did not provide *any* . . . explanation that is responsive to the Court's Remand Order other than rote insistence that an AFA rate comporting with the agency's AFA hierarchy must be inherently adverse.") (internal citations omitted).  While ArcelorMittal is correct that Commerce does rely on and describe the rationale behind its CVD AFA hierarchy, Commerce also addressed why use of hierarchy is appropriate in the instant case: "[t]here is no information on the record to indicate that NLMK's program-specific rate is not sufficiently adverse to the Severstal Companies with regard to that program."  Remand Redetermination at 10.  Cf. BMW of North America LLC v. United States, -- F.3d --, 2019 WL 2482060, at *8 (Fed. Cir. 2019) (remanding for further proceedings because "Commerce did not address how procedural irregularities surrounding the administrative review process affected its view of BMW's level of culpability").  Moreover, Commerce explained that selecting the .03 rate, which was "the highest subsidy rate available for the program at issue," Remand Redetermination at 10, would best balance the statutory purposes of deterring non-cooperation and using a corroborated rate that reflects the subsidization behavior of the Russian government, id. at 9.  See also BMW, 2019 WL 2482060, at *7 (noting that "Commerce has wide discretion when it comes to selecting an AFA rate" but that "[t]he appropriate rate will depend upon the facts of a particular case and cannot be punitive, aberrational, or uncorroborated"); SolarWorld Americas, Inc. v. United States, 41 CIT __, __, 229 F. Supp. 3d 1362, 1366 (2017) ("An AFA rate selected by Commerce must reasonably balance the objectives of inducing compliance and determining an

accurate rate.") (citing F.ili De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d

1027, 2032 (Fed. Cir. 2000)).

This approach is consistent with statute and with Commerce's practice in other cases.  19

U.S.C. § 1677e(d)(1)(A) (providing that Commerce may "use a countervailable subsidy rate

applied for the same or similar program in a countervailing duty proceeding involving the same

country"); see, e.g., SolarWorld, 229 F. Supp. 3d at 1367 (noting that Commerce seeks an AFA

rate that balances the "dual goals" of insuring (1) that non-cooperating respondents do not receive

a better rate under AFA than they would have by cooperating and (2) that the chosen rate "best

approximates how the non-cooperating respondent likely used the subsidy program"); Issues and

Decision Memorandum accompanying the Final Determination in the Countervailing Duty

Investigation of Common Alloy Aluminum Sheet from the People's Republic of China (Dep't

Commerce Nov. 5, 2018), 83 Fed. Reg. 57,429, at 10–11 (noting that "after an evaluation of the

situation that resulted in the application of an adverse inference, Commerce may decide that given

the unique and unusual facts on the record, the use of the highest rate within that step is not

appropriate" but that "[t]here are no facts on this record that suggest that a rate other than the

highest rate envisioned under the appropriate step of the hierarchy applied in accordance with

section 776(d)(1) of the [Tariff] Act [of 1930] should be applied as adverse facts available")

(internal quotations omitted).[2]

ArcelorMittal nonetheless contends that the situation here is "unique" enough to require

Commerce to depart from strictly adhering to its hierarchy.  According to ArcelorMittal, because

---

[2] The amendments to the Tariff Act of 1930, enacted in the Trade Preferences Extension Act of 2015, are applicable to all determinations made on or after August 6, 2015, and therefore are applicable to this proceeding.  See Hyundai Steel Co. v. United States, 41 CIT __, __, 279 F. Supp. 3d 1349, 1354 n.1 (2017).  Commerce explicitly states that the amendments apply.  IDM at 13.

"this case was the first countervailing duty investigation involving subject merchandise from

Russia, steps two through four of Commerce's CVD AFA hierarchy . . . were not available to the

agency," and thus "it was apparent at the time of the <u>Preliminary Determination</u> that Commerce

could not move beyond an analysis under step one of the hierarchy" -- the .03 rate -- "without

departing from the hierarchy altogether." ArcelorMittal's Br. at 13. ArcelorMittal claims that (1)

this circumstance allowed Severstal to game the system to receive a more favorable rate than it

deserved; and (2) Severstal's failure to correct its claim of non-use after the publication of the

<u>Preliminary Determination</u> shows that it chose not to cooperate in order to receive a better rate.

<u>Id.</u> at 12.

This contention is not persuasive. First, as ArcelorMittal acknowledges, there were few

rates available to Commerce from which to choose in this case; indeed, at oral argument,

ArcelorMittal was unable to identify any other rate that Commerce could have or should have

used. Under these circumstances, it was entirely reasonable for Commerce to use the only

available rate which was also explicitly permitted by statute. <u>See</u> 19 U.S.C. § 1677e(d)(1)(A)

(providing that Commerce may "use a countervailable subsidy rate applied for the same or similar

program in a countervailing duty proceeding involving the same country"). Additionally,

ArcelorMittal does not and cannot point to any record evidence that supports its theory that

Severstal intentionally omitted its mining program use from its initial questionnaire responses or

that a different preliminary rate would have compelled Severstal to correct information that it may

not have even known was wrong. It was not unreasonable for Commerce to refuse to choose a

different, potentially uncorroborated rate based on mere speculation. Thus, the circumstances of

this case are not so unique as to require Commerce to deviate from its hierarchy. <u>Cf.</u> <u>BMW</u>, 2019

WL 2482060, at *7 (remanding for further proceedings because "Commerce did not consider or

address BMW's argument regarding" the effects of procedural abnormalities on BMW's ability to

cooperate, including the rescission and subsequent reinstatement of the review after the Federal

Circuit reversed a ruling of this court over two years after the rescission).

**II.**     ***Commerce Did Not Abuse Its Discretion by Rejecting NLMK's Untimely Comments.***

NLMK claims that Commerce abused its discretion by rejecting NLMK's untimely request

for an extension of time to submit its comments.   NLMK now requests that the court receive

NLMK's comments into the record and consider the arguments contained therein.   NLMK's Br.

at 2–5; Mot. to Suppl. the Record.   Specifically, NLMK contends that, because no regulation or

statute governs time limits and extensions with respect to remand proceedings, nothing prevented

Commerce from accepting NLMK's comments and NLMK presented good cause for Commerce

to extend the deadline and accept the comments.

The court is not persuaded.   While NLMK is correct that no statutory provision or

regulation, by its terms, governs time limits and extensions with respect to remand proceedings,

NLMK's argument belies the fact that "Commerce has broad discretion to establish its own rules

governing administrative procedures, including the establishment and enforcement of time limits."

Yantai Timken Co. v. United States, 31 CIT 1741, 1754–55, 521 F. Supp. 2d 1356, 1370–71

(2007), aff'd, 300 F. App'x 934 (Fed. Cir. 2008) (quoting Reiner Brach GmbH & Co. v. United

States, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002)); Fine Furniture (Shanghai) Ltd. v.

United States, 36 CIT 1206, 1218, 865 F. Supp. 2d 1254, 1266 (2012), aff'd, 748 F.3d 1365 (Fed.

Cir. 2014), and aff'd, 748 F.3d 1365 (Fed. Cir. 2014) (recognizing that "setting and enforcing its

own deadlines is within Commerce's discretion") (citing Reiner Brach, 206 F. Supp. 2d at 1334;

Yantai Timken, 521 F. Supp. 2d at 1371).   This court has recognized that Commerce's broad

discretion to set and enforce deadlines applies to remand proceedings.   See Timken Co. v. United

<u>States</u>, 40 CIT __, __, 179 F. Supp. 1168, 1176 (2016) ("Commerce's discretion in setting time

limits to comment on draft results of redetermination is broad.").  Moreover, "[s]trict enforcement

of time limits and other requirements is neither arbitrary nor an abuse of discretion when

Commerce provides a reasoned explanation of its decision."  <u>Maverick Tube Corp. v. United</u>

<u>States</u>, 39 CIT __, __, 107 F. Supp. 3d 1318, 1331 (2015) (citing <u>Dongtai Peak Honey Indus. Co.</u>

<u>v. United States</u>, 38 CIT __, __, 971 F. Supp. 3d 1234, 1242 (2014)).

The parties dispute the significance of 19 C.F.R. § 351.302 to this case.[3]  <u>See</u> NLMK's Br.

at 3; Def.'s Br. at 17.  That provision regulates the extension of time limits in antidumping and

---

[3] 19 C.F.R. § 351.302 provides:

(a) Introduction. This section sets forth the procedures for requesting an extension
of a time limit. In addition, this section explains that certain untimely filed or
unsolicited material will be rejected together with an explanation of the reasons for
the rejection of such material.

(b) Extension of time limits. Unless expressly precluded by statute, the Secretary
may, for good cause, extend any time limit established by this part.

(c) Requests for extension of specific time limit. Before the applicable time limit
established under this part expires, a party may request an extension pursuant to
paragraph (b) of this section. An untimely filed extension request will not be
considered unless the party demonstrates that an extraordinary circumstance exists.
The request must be in writing, in a separate, stand-alone submission, filed
consistent with § 351.303, and state the reasons for the request. An extension
granted to a party must be approved in writing.

(1) An extension request will be considered untimely if it is received after
the applicable time limit expires or as otherwise specified by the Secretary.

(2) An extraordinary circumstance is an unexpected event that:

(i) Could not have been prevented if reasonable measures had been
taken, and

(ii) Precludes a party or its representative from timely filing an
extension request through all reasonable means.

countervailing proceedings but does not expressly govern remand proceedings.  See Timken Co. v. United States, 40 CIT __, __, 179 F. Supp. 3d 1168, 1176 (2016) (recognizing that "Commerce's discretion in setting time limits to comment on draft results of redetermination is broad, as there is no statute or regulation governing its conduct in this situation").   Nonetheless, it appears that Commerce chooses to adhere to the directives of 19 C.F.R. § 351.302 in remand proceedings, see, e.g., Jinxiang Yuanxin Imp. & Exp. Co. v. United States, 39 CIT __, __, 71 F. Supp. 3d 1338, 1356 (2015) (holding that "the Department did not abuse its discretion in rejecting the market and price data that Yuanxin filed nine days after the submission deadline" for Commerce's remand redetermination and citing 19 C.F.R. § 351.302); Diamond Sawblades Mfrs. Coalition v. United States, No. 06-00248, 2014 WL 5463307, at *3–*4 (Oct. 29, 2014) (noting that the Government and defendant-intervenor stated that a proper extension of time request for remand comments should have been made under 19 C.F.R. § 351.302), which NLMK acknowledged in its untimely request for an extension of time.

---

(d) Rejection of untimely filed or unsolicited material.

(1) Unless the Secretary extends a time limit under paragraph (b) of this section, the Secretary will not consider or retain in the official record of the proceeding:

(i) Untimely filed factual information, written argument, or other material that the Secretary rejects, except as provided under § 351.104(a)(2); or

(ii) Unsolicited questionnaire responses, except as provided under § 351.204(d)(2).

(2) The Secretary will reject such information, argument, or other material, or unsolicited questionnaire response with, to the extent practicable, written notice stating the reasons for rejection.

In any event, just because Commerce was not required to adhere to 19 C.F.R. § 351.302 does not mean that using this regulation as a guideline constituted an abuse of discretion; if anything, Commerce's adaptation of the framework of 19 C.F.R. § 351.302 helped ensure that the result in this case would be consistent with the outcomes in similar situations involving untimely requests for extensions of time in antidumping and countervailing duty proceedings.  See Neo Solar Power Corp. v. United States, 40 CIT __, __, 190 F. Supp. 3d 1255, 1262 (2016).

Here, Commerce set deadlines consistent with the procedures established for similar circumstances and explained its rationale for rejecting NLMK's untimely submission.  Commerce set a clear deadline for comments on the draft remand redetermination.  NLMK failed to meet that deadline and did not even seek an extension of time to submit comments before the deadline had expired.  As Commerce explained when rejecting NLMK's untimely submission, the only reason that NLMK gave to explain the untimeliness of its submissions was that the notice of the draft remand redetermination has been "lost in e-mail traffic" while NLMK's counsel was traveling. NLMK's Br. at 2–3; Rejection Letter.  Moreover, NLMK was aware of the impending deadline for Commerce to submit the Remand Redetermination to this court and thus should have anticipated the release of the Remand Redetermination.  See Rejection Letter; see also Jinxiang Yuanxin Imp. & Exp. Co. v. United States, 39 CIT __, __, 71 F. Supp. 3d 1338, 1356 (2015) (holding that "the Department did not abuse its discretion in rejecting the market and price data that Yuanxin filed nine days after the submission deadline" because the court's remand order put Yuanxin on notice that it would have an opportunity to submit new information and Yuanxin provided no reason why it could not have timely filed its data or requested an extension of time).

"Commerce . . . routinely rejects untimely-filed submissions" where, as here, a respondent fails to demonstrate good cause.  Dongtai Peak Honey Industry Co., Ltd. v. United States, 777

F.3d 1343, 1351–52 (Fed. Cir. 2015) (emphasis original).  In <u>Dongtai Peak Honey</u>, for example, the Federal Circuit determined that Commerce permissibly found that a company lacked good cause for a late filing, which it explained was due to difficulties communicating between American counsel and the Chinese client, computer problems, and a Chinese holiday.  <u>Id.</u> at 1350.

Nonetheless, NLMK contends that Commerce here abused its discretion to set and enforce deadlines and cites two cases, <u>Artisan Mfg. Corp. v. United States</u>, 38 CIT __, 978 F. Supp. 2d 1334 (2014) and <u>Grobest & I-Mei Industrial et al v. United States</u>, 38 CIT __, 815 F. Supp. 2d 1342 (2014), in support.  In those cases, this court found that Commerce abused its discretion by rejecting untimely requests for an extension of time because the interest in accuracy and fairness outweighed the interest in finality and the burden placed on Commerce; therefore, according to NLMK, Commerce likewise abused its discretion in this case.

The court notes that both <u>Artisan</u> and <u>Grobest</u> were issued prior to the Federal Circuit's precedential decision in <u>Dongtai Peak Honey</u>, discussed above.  In any event, the facts of those cases materially differ from the circumstances here.  In <u>Artisan</u>, Artisan submitted a questionnaire response the morning following the due date at or near the beginning of business hours, 978 F. Supp. 2d at 1345, and the result of Commerce's rejection of the questionnaire response was to impose an adverse rate on the company that was likely twice what it would have paid otherwise, <u>id.</u> at 1347.  Considering the "inconsequential" effects of the delay, <u>id.</u> at 1345, and the "particularly severe" effect on Artisan, <u>id.</u> at 1347, the <u>Artisan</u> court found that, "<u>in the particular circumstances of this investigation</u>," Commerce had abused its discretion, <u>id.</u> at 1344–45 (emphasis original).  Similarly, in <u>Grobest</u>, the court noted that the late-filed document was consistent with information given to Commerce in several past administrative reviews of the same company, that the "the margin assigned to [plaintiff] was likely inaccurate and disproportionate,"

and that the document was filed "more than seven months before Commerce released the preliminary results and one year before Commerce released the final results. Thus, there is no concern with finality in this case." 815 F. Supp. 2d at 1367 (citing <u>Timken U.S. Corp. v. United States</u>, 434 F.3d 1345, 1353–54 (Fed. Cir. 2006)).

In contrast, here, as previously discussed, "NLMK has not demonstrated an unexpected event that could not have been prevented and that precluded them from timely filing an extension request through all reasonable means"; that is, that NLMK's counsel's "inattentiveness" to its "email traffic" was insufficient reason to extend the deadline. Rejection Letter. Additionally, as NLMK itself noted in its extension request, Commerce had only about two weeks after the deadline for comments on the remand results before it was required to file the <u>Remand Redetermination</u> with this court, and "NLMK's counsel should have been expecting Commerce to issue the Draft Remand Results for comment in advance of that deadline." <u>Id.</u> Finally, nothing in the record of this case suggests that Commerce's rejection of the untimely request resulted in a disproportionately punitive margin.

"The United States Supreme Court has clarified that, '[a]bsent constitutional constraints or extremely compelling circumstances [,] the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." <u>Dongtai Peak Honey</u>, 777 F.3d at 1351 (quoting <u>Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.</u>, 435 U.S. 519, 543 (1978)). "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record." <u>PSC VSMPO–Avisma Corp. v. United States</u>, 688 F.3d 751, 760 (Fed. Cir. 2012).

For the reasons discussed above, no such "extremely compelling circumstances" exist in this case. Thus, in light of the "[i]mportant principles of timeliness and finality [that] undergird all aspects of litigation," Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012), and the facts of this case, it was not an abuse of discretion for Commerce to reject NLMK's untimely extension request and submissions.

## III.   *NLMK Failed to Exhaust Its Administrative Remedies.*

"A reviewing court usurps [the agency's] function when it sets aside an agency determination upon a ground not theretofore presented and deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action." Unemployment Compensation Comm'n v. Argon, 329 U.S. 143, 155 (1946). A party who fails to exhaust their administrative remedies in this manner therefore may not raise an issue for the first time before the trial court. See Boomerang Tube LLC v. United States, 856 F.3d 908, 910 (Fed. Cir. 2017) ("[A]bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."); Corus Staal BV v. United States, 856 F.3d 1370, 1379 (Fed. Cir. 2017) (noting that the Federal Circuit takes "a strict view of the requirement that parties exhaust their administrative remedies before . . . Commerce in trade cases") (internal quotations omitted); AIMCOR v. United States, 141 F.3d 1098, 1111–12 (Fed. Cir. 1998).

This exhaustion requirement applies to remand proceedings. See Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008) (holding that party failed to exhaust administrative remedies by not raising issue in comments on draft remand results); AIMCOR, 141 F.3d at 1111–12 (same)); Taian Ziyang Food Co. v. United States, 37 CIT __, __, 918 F. Supp. 2d 1345, 1361 (2013) ("The prescribed avenue for challenging remand results requires that a party

first file comments on the draft results at the administrative level, setting forth the party's

objections.") (citing Mittal Steel, 548 F.3d at 1383–84; AIMCOR, 141 F.3d at F 1111–12).

Here, because Commerce rightly rejected NLMK's untimely comments and removed them

from the record, NLMK's objections to the draft remand redetermination were never properly

before Commerce.  NLMK thus failed to exhaust its administrative remedies[4] in challenging the

draft remand redetermination.

In any event, Commerce's Remand Redetermination complied with the court's instruction

to "identify record facts on which it bases its *de facto* specificity finding," which could come from

a variety of sources, including the petition or "any other information placed on the record."

ArcelorMittal, 337 F. Supp. 3d at 1307 (citing 19 U.S.C. § 1677e(b)(2)).  Pursuant to this directive,

Commerce identified the 2013 Gazprom annual report contained in the petition.  As described

supra, contrary to NLMK's assertions, Commerce also adequately explained its selection of the

2013 annual report.  Commerce indicated that the following evidence in the 2013 annual report

supports the adverse inference that the metallurgy sector is "a predominant user" of the natural gas

subsidy and thus met the *de facto* specificity criteria of 19 U.S.C. § 1677(5A)(D)(iii)(II):

> (1) the metallurgy industry "heavily used" natural gas and accounted for four
> percent of Gazprom's total sales in 2013; (2) the metallurgy sector is one of the top
> six sectors that accounted for Gazprom's 2013 domestic natural gas sales; and (3)
> the metallurgy sector is the only industrial manufacturing sector whose
> consumption of Gazprom's natural gas is separately listed in the annual report.

---

[4] Nor is there an exception -- such as futility or a pure question of law -- that excuses NLMK's
failure to exhaust its administrative remedies in this case.  See Agro Dutch Indus. Ltd. v. United
States, 508 F.3d 1024, 1029 (Fed. Cir. 2007); Corus Staal, 856 F.3d at 1379.  For instance, there
is no reason to believe that Commerce would not have appropriately considered NLMK's
comments, had they been timely submitted.  Additionally, the question of whether the metallurgy
sector is a predominant user of the natural gas subsidy is a highly factual determination that
requires Commerce to identify and evaluate relevant record evidence.  See ArcelorMittal, 337 F.
Supp. 3d at 1307 (noting that the AFA statute requires Commerce to support the *de facto* specificity
finding with record evidence).

Remand Redetermination at 20.

## CONCLUSION

Commerce's Remand Redetermination is sustained in its entirety.   NLMK's motion to

supplement the record is denied.

**SO ORDERED.**

*/s/   Gary S. Katzmann*
Gary S. Katzmann, Judge


 Dated:  July 29, 2019
          New York, New York